And will you call the next case, please? Mr. Muslin. Thank you. Good afternoon, Justices. Good afternoon. My name is Steve Muslin, and I represent Galen Maloney. There are a number of issues in this case, and I believe most of them have been very adequately and completely briefed. So I will address what I believe this appeal is really about, and that is the miscarriage of justice that has applied to Mr. Maloney based upon impermissible conduct of the troopers, the original attorney whom Mr. Maloney had hired, and the legislature in their infinite wisdom in finding that 550G, the statute carries for first-timers and takes the discretion totally away from the court in having a 6-30 Class Act sentence. And I'll start at the beginning, and that is at the time of the stop. In this case, the stop arose as a Scots law violation. Mr. Maloney was driving. There was a trooper giving a ticket on the side of the road, apparently. He did not move far enough away from that trooper, and he was stopped by another trooper for the stop, Scots law violation. When he was stopped, he pulled over, and the trooper that stopped him came up to the passenger side of his vehicle. Mr. Maloney rolled down the window. The trooper talked to him from the passenger side of the vehicle, took Mr. Maloney's license and registration, never indicated anything about any smell of marijuana or cannabis coming from the vehicle in any way, shape, or form, took the license and registration, went back to his vehicle, and while he was checking, he said he was going to give him a warning ticket. While he was checking the license and registration, he also indicated that it was a rental vehicle, and the rental vehicle was from Reno, that Mr. Maloney had a San Francisco license, and that the return of the vehicle was seven days from the date of the rental. With that, there was a comment made by the trooper who was the one giving the ticket in the Scots law violation on the side of the road, which was, wow, which indicated that this was an interdiction officer. Based upon the information that he had now received, he believed this was somehow a narcotics trafficking vehicle, with no other information whatsoever. While the officer who was doing the warning ticket was gathering the information, the trooper who had been giving the ticket, which gave rise to the Scots law violation, came to Mr. Maloney's car and said he wanted to talk to him about the Scots law violation, and stood next to the car, looking in the car, and observed in the car a cup of what he believed had some sort of cannabis in it, and he then started questioning Mr. Maloney without the benefit of providing him any Moran warnings. Now, I understand that the issue could be raised that, well, he wasn't under arrest, except for the court has held that whenever there's a traffic violation, and whenever license and registration have been taken from the driver, that is equal to an arrest. And since it can't be alleged to be a Terry violation, because the Terry information had already been received by the trooper who was writing the warning ticket, Officer Thulin, I think I always pronounce his name wrong, but I think that's what it is, was solely there for the purpose of interrogating him to find information upon which he could give rise to probable cause or reasonable suspicion for a search. And he did not, at any time, give him his Moran warnings before he was gathering this information. Are you sure? Sure. What would constitute the interrogation, I mean, for Moran purposes? Where he was going, where he was coming from, what did he have in the trunk, did he pack the trunk himself?  Actually, Thulin asked Mr. Maloney to give him the contents of the cup in the car, because he believed that was going to be some type of cannabis. Those are the kind of things that were being used to give rise to articulable facts upon which he could then try to have reasonable suspicion upon which to have a probable cause for the search of the vehicle. After a period of time went on, and he found that the cup had no cannabis in it, and he found that he had gathered nothing else from the car, he then said, I think I smell cannabis, and he took Mr. Maloney out of the car, and he took him to the front of the car, he took the keys from Mr. Maloney, he had Mr. Maloney stand at the front of the car, he called over the other officer who was still in the process of writing the warning ticket, and they then took the keys, opened the trunk of the car, and found cannabis. Now, the thing about this is, and I know the courts have been holding, well, that when an officer says he smells cannabis, that gives probable cause for a search of a vehicle. And the problem I have with that is, the Fourth Amendment says that a neutral magistrate is one who can look at facts and give rise to probable cause and issue a warrant therefrom. I understand it's a vehicle, I understand we have the Schimel exception, except in this case, when they already took the keys from the vehicle, they took Mr. Maloney out of the vehicle. I mean, at that point, I don't think there's any question that he's seized, and this is a search, I think their argument is at that point, so basically, he's seized, and their argument is making a probable cause. Right, their argument at that point is he's seized, and the reasonable, the probable cause for the search is coming from the fact that an officer says, I smell cannabis. Now, at this point in time... He says he smelled raw cannabis in vacuum-packed bags. In vacuum-packed bags. He says he smells raw cannabis in vacuum-packed bags, and he goes to the trunk, he opens it, and there is a suitcase, and there is cannabis in vacuum-packed bags, and again, of course, the courts have held that the propriety of the search can't be bootstrapped by what comes up, what it turns up. So we have to look at, you know, what was it that gave him reason to search the car, and my point about bringing up the neutral magistrate is I know the courts have said, you know, an officer who says he smells cannabis can give rise to probable cause, but is that... First of all, that's not a neutral magistrate, and second of all, is an interdiction officer neutral when he knows that he has this unfettered ability to say, if I say I smell cannabis, I can go ahead and search this car. If there's no cannabis, the guy's going to go on his way and he's not going to be complained, and so we don't know whether there's a history of positive hits or negative hits. What I believe the officer should have done is more like what this court allowed in Smith, is that in Smith, the officer said he smelled cannabis in the vehicle, but he didn't search the car. What he did was call for a canine and have the canine walk the car, and then when the canine hit, they allowed the search. Let me ask you, I mean, doesn't this thing really boil down to... I'm totally unsympathetic to what you're saying, but also at the same time, doesn't this really boil down to whether the trooper who says, I smell raw cannabis, whether that was credible testimony, and from where we're sitting, I think reasonable people could agree that that stretches one's credulity out there pretty far. I agree. But the trial judge said he believed him. Right, and there's our problem. The trial judge said he believed him, and the reason the trial judge said he believed him  was brought into the courtroom and the trial judge, I believe, commented, well, I can smell it here, too. So the question is, yeah, was that credible enough for this court to find probable cause existent for the search of that car? You know, the judge, the credibility, I mean, this court's prepared and willing to do so. I believe it falls on the side of Mr. Maloney. But I don't know that it even has to be reached at that point, because I don't know that the circumstances that existed at the time of the stop justified having this officer come up, stick his head in the car, claim that he smelled something, but not until after he looked in this cup, because he thought he was going to get his probable cause from this cup, and he wanted the probable cause because what he had was, in his mind, was a license from San Francisco, rental car in Reno, return in seven days. And that's a hunch, and it's a good hunch, and I can't fault him for his hunch, but I can fault him for raising that hunch to probable cause and having the court find that that hunch rose to probable cause. Well, but I think the court found, and you can give me a hook, but what the court found, what the trooper said was, as I'm chit-chatting with this fellow, I smelled raw cannabis. And therein arose, under the law, the probable cause. And that is true. That's what he said. But my issue is, why is he even chit-chatting with him? Why is he over there sticking his head in the car? Why is he asking him to give him this cup? Why is he, you know, at that point, he's doing a lot more than chit-chatting from the side of the road. He's there with a purpose. The chit-chat is to disguise that purpose. But the law says that. I was going to say, right, pretext stops are okay, so long as there's probable cause for the pretext stop. And moving forward from there, the search of the car, the cannabis turns up. The other thing is this. You know, they argue this. Let's assume that the officer did smell the cannabis, okay? And all he had to do at that point, because he has the car, he sees, my client sees, the car sees, he has the keys, Shemelle is a moving car exception, this car isn't going anywhere because the officer has the keys, he can have the car towed, he can bring a dog, the easiest thing under umbrellas, bring a dog, have him walk around. He chooses not to do any of that. He chooses just to open the truck at that point in time. The next problem, the next problem, I'm sorry. Oh, I thought someone said something. I'm so worried about my time. We've got squeaky chairs around here. The next problem, how much time do I have? Two. Only two. The next problem that arises is his attorney's performance, and that is pretty much briefed very well. And the last thing I'll talk about is this 550G. This is an unusual case. The sentencing aspect of 550G is unconstitutional, as applied to Mr. Maloney, for this reason. In this world today, 15, maybe today it's 17, because they're voting off Florida just passed medical marijuana. There's recreational marijuana available in several states. Justice Hamer said, you know, if I could, I would give you probation. You're the guy who's entitled to it. Never been in trouble before. This probably would be a do-over if you woke up tomorrow and thought about what you did. But my hands are tied. And the reason that I believe that's unconstitutional, as to Mr. Maloney, is very simple. The test is, does the sentence shock the conscience of the community? And at this point in time, with the Gallup poll showing, I think, way over 50% in favor of legalization, 17 states, I believe, have medical marijuana, which, unfortunately, has become the wink-wink of legalization. Three states have legal recreational marijuana. In Colorado, they have vending machines in the airports selling edible marijuana products. I'm not asking this court in any way, shape, or form to legalize marijuana. But what I'm asking... That's a little bit over our head scale. I understand. But what you do have the ability to is to declare, as applied to Mr. Maloney, this statute is unconstitutional because the fact of a first-timer who was arrested with 5,300 grams of marijuana, when 5,000 can be for personal use, I'm not sure how that happens, but it shocks the conscience of the community to understand that the penalty which is imposed upon him is the same... And I have no discretion for this. ...is the same penalty which is imposed upon armed robbers, rapists. You have to have two criminal sexual assaults of a child to get to be a class X. When you talk to people about this, they are all shocked. And it is in your job ability to declare this unconstitutional as to Mr. Maloney. Thank you. I'm sorry. Lastly, one thing one might do that also might shock the conscience of people, or at least the pocketbook, is if you're not in court, educating the public as to what this is costing them, that what it's costing the taxpayers to house this gentleman for... And not only Your Honor has indicated that, but Eric Holder is saying that now publicly that this war on drugs, other than for violent offenders, is breaking the criminal justice system financially and physically. But that does not go to the constitutionality. The constitutionality issue goes to Mr. Maloney and how it has affected him and would that shock the conscience of the court. I believe it shocked Judge Hamer in his comment. I have not seen in many, many years a judge say, you know, I would give you probation if I could. Thank you. All right. Thank you, Mr. Bundle. Mr. Rano. Please, the court. Good afternoon, Your Honors. Counsel. I guess the... Perhaps I should take the last thing first. The function of the legislature is to determine what evils of free society and to determine what punishments should be meted out for those who violate the law. When it comes to deciding what level of penalties, that is the legislature. It's not for a court to decide that. I think the Illinois Supreme Court has talked about that as well as other cases. In fact, counsel has argued in Yoslowitz, which is a... I'll probably butcher that name. In the Fourth District, the same basic argument that it violates due process and Fourth Amendment principles. There's nothing that really shocks the conscience about a six-year sentence when you have over 5,000 grams of marijuana plus... Which will last in Chicago, what, about three seconds? I'm just saying, from a public policy standpoint, as you've probably figured out over the last 12 years, my conscience doesn't get shocked that easily. But this is pretty bad. What we can do about it is we're in the wrong building, I think. And I concur with Your Honor about the wrong building. You need to go to the legislature and say, this has all been coming through the last few years through the legislature or constitutional amendments to Colorado and Washington. This wasn't through the court saying possession is bad. As far as the amount of marijuana being a wink-wink in Illinois, I don't believe that's the case. There's a very strong structure set forth in the medical marijuana laws that were passed last year. In fact, there was a clinic in Chicago that was attempting to do the old wink-wink, get people signed up, and it was shut down. So this isn't a matter of allowing people surreptitiously, such as in California, to obtain marijuana through just getting a prescription. There are much more stringent requirements involved. So legislature has just recently, under this medical marijuana, made a distinction between medical marijuana and personal use and is still outlawing personal use of marijuana for recreational purposes. So I think this court is not in a position to overturn that jurisdictional law. What about the probable cause on this case? I believe the problem is that we might see it on the video if it opens up this suitcase, but we don't know what the actual integrity of the package is. They say, well, Dr. Warford testifies it was vacuum-sealed, but he then admits later he doesn't know whether there's leaks in it, doesn't know whether there's loose cannabis in the suitcase, doesn't know anything about what there is as far as the ultimate how of this package. He says, well, if it's vacuum-sealed, you can't smell it between there. But then he admits he doesn't know how, under these circumstances, it was actually finally packaged. And that's in part of the record. And, of course, by the time it gets to court, the police have opened the package. But what we have, as Your Honor pointed out, is credibility and determination by a trial judge, and there's nothing in the record that should overcome that, saying that this was against the manifesto or the evidence. I mean, Officer Tholen talks about if an officer is trained and has the background and testifies to that, and he testifies that he has smelled this marijuana, it doesn't matter that the probable cause to effectuate a search. As far as this pretext or the pretense, as Judge Hammer pointed out, that's really kind of irrelevant, because once he smells that marijuana, that's what gives him the probable cause to go ahead and conduct the search. So it is not a... And there's nothing common about, well, he should have gotten the dog. Well, there's cases saying that if you prolong the search because you spend a lot of time waiting for the dog to show up, well, now that's reversible. So what is the officer going to do? And it seems here the issue is for the search, either he had probable cause to open that trunk or he didn't. And he said he smelled it, and the trial judge said, I believe you, and we have to find that it's a matter of law that the judge's credibility determination is against the manifesto or the evidence. What was the entire length of the stop from the time that Strauss stopped him until the time that they began the search? It was less than six minutes. It was about the 36-minute mark that he actually finally, on the video, that he pulled him over. And it was about 6, 6.10, I think, on the clock, on the video clock that he pointed to his nose. And by the way, from a former career, I'm kind of familiar with some of the sign language, and that noise meaning I visibly smell something. It doesn't mean I smell a rat, so to speak. It's something's up. But I guess that's either here or there. By the way, did it bother you at all that the trooper who goes up to the car and is spending the time there has got his mic turned off? Well, he wasn't the one who pulled him over, so the fact that he didn't have it recording doesn't bother me. I mean, I don't think it's a problem. Well, I guess those are all things that would go on the trial judge's... decision in there. I believe the remainder of the article issues are put on a brief, and I don't think there's much to add. By the way, I forgot to tell you all at the beginning, don't count this on Mr. Otto's time. You've probably been here before today. This is a three-judge panel. Justice Litton couldn't be here. He will be listening to the oral arguments. He's obviously already read the briefs and stuff, and will be participating in deciding. He's just as though he were sitting there. My bad. Do you have any questions? Thank you, Your Honor. You were asked at this important forum. All right, thank you, Mr. Brown. Mr. Musselman, any rebuttal? Briefly, I'd like a few questions that you asked. Part of the... In our brief, part of the issue, and it does bother us about the microphone being turned off, and it bothers us about the fact that many of the Fourth Amendment issues were not raised, or were raised but never presented to the court by counsel for... or who was the trial counsel for Mr. Maloney. I mean, that's one of our issues, is the question of ineffective assistance. Well, what would he have raised? Like I said, other than you mentioned Miranda, anything else that... The Fourth Amendment issues with respect to Miranda, with respect to the seizure of the cup, with respect to the mic being turned off. Additionally, there was the issue of what appeared to be a stipulated bench trial, and the only time he would do a stipulated bench trial would be for purposes of preserving issues on appeal. And yet the counsel basically pled him guilty to the charge of possession with intent to deliver, didn't put any evidence forth, or even attempt to challenge any evidence with respect to that, conceded the point, and then never filed post-trial motions whatsoever. So it certainly can't be said that trial counsel had trial strategy in mind when he never preserved any issues. It wasn't until I got involved. Well, on the intent to deliver, with this much... Can you imagine any trial judge not filing the intent to deliver? Only in Cook County. Well, that's... I mean, I just had a 15-pound case in Cook County in two years' probation. I mean, that's the gross disparity about this, and while your counsel said that, you know, that you don't... You're not in the right building in the case law, and I cite it, I don't remember the exact case. You do have the power to... While the legislature fashions a law, you have the power to say, no, this is not constitutional, go back and correct it. And that's within the powers of the appellate court and the Supreme Court. And that's basically what we're asking. In order to cure this unconstitutionality, which occurs to people like Galen Maloney, counsel refers to the Yoselowitz case. Yes, that's true. We handled that case, and we argued it in the 4th District. There was a great difference between Yoselowitz and Maloney. Yoselowitz was virtually a career drug dealer who had had prior convictions, who posted intelligently on MySpace how much money he made selling drugs. And, of course, it, as applied, would not shock the conscience of the court with respect to him. With respect to an individual like Mr. Maloney, and that's why we argue it as applied, we believe it does shock the community. And that, we believe, gives you the power to say, not, you know... So, but for the concession of counsel, the trial judge could have filed a guilty... He didn't even argue it. I mean, he basically said, Your Honor, I understand how you could find... We concede you could find him guilty of possessions with intent to deliver. And not, on the other hand, arguing, which I did in my post-trial motion, well, you know, there's this dichotomy in the statute that says if you have 5,000 grams, court can find it for personal use. Now, that, although a state's attorney in Cook County said to me, you know, God, it's a long summer if you find that. But the reality of it is, 5,300 grams, it's, you know, tipping the scale a little bit. Maybe with an argument, it could have given the judge that ability. There was no money found. There was no, you know, packaging materials found. There was none of that. Well, as you pointed out, the trial judge can find... make whatever findings of fact he wants to in the bench trial, right? Right. But there should be some argument by counsel to allow him to do that. And there wasn't here. So that goes to our... one of our issues on the ineffective assistance. Your Honor, we would ask that you reverse this case on a number of issues. One, to reverse it based on the probable cause issue, because it does sort of fly in the face of credibility that vacuum-sealed packs can be so easily smelled on a highway. And if you look at the video, it was kind of cold and rainy that day, too, and there were all kind of trucks going by at the time. And then secondly, on the ineffective assistance for remand. And thirdly, with respect to the unconstitutionality, which would only put Mr... If you found that to be unconstitutional and it was remanded, it would become a Class I, which would give the judge the discretion to do something which would not shock the community. Thank you. Unless there's any other questions. No. Thank you. Thank you. Thank you, Mr. Muzzlin. Mr. Durato, thank you, too. And the matter will be taken under advisement. Written disposition will be issued. Right now will be in what we hope is a brief recess for a panel change before the next case. Thank you. Thank you.